Sidney MORSE, Plaintiff,

v.

Robert WEINGARTEN, American Express Co., Shearson Lehman Brothers, Inc., and Michael R. Milken, Defendants.

No. 91 Civ. 3893(MEL).

United States District Court, S.D. New York.

Nov. 13, 1991.

Wechsler, Skirnick, Harwood, Halebian & Feffer, New York City, for plaintiff

(Stuart D. Wechsler and Daniella Quitt, of counsel).

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendant Michael R. Milken (Colleen McMahon and Beth Friedman Levine, of counsel).

LASKER, District Judge.

Defendant Michael Milken moves under Rules 12(b) and 9(b), Fed.R.Civ.P., to dismiss all claims against him in this securities fraud class action suit, and under Rule 12(f) to strike portions of the complaint.[1]

For the reasons discussed below, the motion to dismiss and the motion to strike are granted.

## I.

Plaintiffs are shareholders who bought stock in the now-bankrupt First Capital Holdings Corp. ("First Capital") between March 31, 1989 and May 31, 1991.

Their complaint alleges: 1) that Milken either caused or helped defendant Robert Weingarten to establish First Capital, a financial services and insurance holding company that derived much of its revenue from its investment portfolio; 2) that Milken, in his capacity as "junk bond chief" (Morse's term) of the brokerage firm Drexel Burnham Lambert, underwrote First Capital's financing through offerings of junk bonds; 3) that "Drexel/Milken" exercised control over First Capital's investment portfolio and caused it to invest heavily in junk bonds issued by other clients of Milken and Drexel; 4) that First Capital issued statements, including annual reports and reports filed with the Securities and Exchange Commission (SEC), which contained misrepresentations or misleading omissions indicating that its financial condition was sound and that its effective portfolio management reduced the risk normally associated with junk bonds despite the fact that the value of its junk bond portfolio was deteriorating rapidly; 5) that defendants knew or were recklessly indifferent to the falseness of their representations or the misleading nature of their omissions; 6) that plaintiffs bought stock from March 31, 1989 through May 31, 1991 in reliance on those misrepresentations or misleading omissions; and 7) that First Capital collapsed, filing for bankruptcy on May 30, 1991[2] and thereby injuring plaintiffs.

Morse alleges that Milken's participation in these events was part of a broader attempt by him to operate a scheme, which Morse calls a "Daisy Chain," by which Milken would both arrange financing for various entities with high-risk, high yield "junk bonds" and cause the same entities to invest in junk bonds of other Milken clients, all in an attempt to create an artificially inflated market for financial products created by Drexel and Milken.

As part of the alleged scheme, Morse claims, Drexel and Milken knowingly "made materially false and misleading statements ... to prospective purchasers or sellers in order to induce the purchase or sale of high-yield securities," Compl. at ¶ 61, and induced sales of high-yield securities by advising "certain prospective purchasers and sellers that their participation in the Drexel Daisy Chain would increase the price of high-yield securities." Compl. at ¶ 62. The complaint also alleges that Drexel and Milken "purchased and sold high-yield securities while in possession of material information, not generally available to the public, obtained from their relationships with the issuers and purchasers...." Compl. at ¶ 63.

Finally, Morse asserts:

Milken played an ongoing dominant role in the operation of the Daisy Chain. Pursuant thereto, he materially aided and abetted the other defendants in the wrongdoing herein alleged. Drexel/Milken further exercised substantial discretion and investment authority over [First Capital's] junk securities portfolio which he exercised without regard to [First Capital's] stated investment goals

---

1. The suit has been brought as a class action but not certified as such by this Court.

2. The Amended Complaint refers at ¶ 3 to a bankruptcy filing date of May 30, 1990, but that apparently is a typographical error.

and further engaged in numerous unsuitable and unnecessary transactions. Defendants' statements to the contrary acted as a fraud upon plaintiff ...

Compl. at ¶ 64.

## II.

According to Morse, the facts alleged constitute violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a) (1988), Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, and common law fraud and negligent misrepresentation.

Milken argues that the claims against him must be dismissed pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted and pursuant to Fed.R.Civ.P. 9(b) for failure to plead the circumstances constituting fraud with particularity. He also maintains that portions of the complaint should be stricken pursuant to Fed.R.Civ.P. 12(f).

Under Rule 12(b), the required inquiry is simply whether Morse has alleged facts that, if true, would constitute a violation of securities laws or applicable common law. Because Morse alleges fraud, his claims must also comply with Rule 9(b), which provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Construing Rule 9(b), the Court of Appeals for this Circuit has recently held that "while Rule 9(b) permits scienter to be demonstrated by inference, this 'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.' An ample factual basis must be supplied to support the charges." *O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir.1991) (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990)).

### A. Section 10(b)

Morse argues that his allegations support recovery against Milken for primary violations of § 10(b), for aiding and abetting primary violations by other defendants, for "control person" liability pursuant to § 20(a), and for conspiring with other defendants to commit violations.

#### 1. Primary Violation

█ Section 10(b) states that it is unlawful for any person "[t]o use or employ, in connection with the purchase or sale of any security ..., any manipulative or deceptive device or contrivance...." 15 U.S.C. § 78j(b) (1988).

Typically, to state a claim for a primary violation of § 10(b) and Rule 10b–5 a plaintiff must allege that "in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's actions caused him injury." *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 61 (2d Cir.1985).

Milken correctly observes that all of the representations or misleading omissions upon which Morse alleges he relied were contained in statements issued by First Capital, not by Milken, and that Morse has not alleged that Milken had any direct responsibility for preparing or distributing those representations. The complaint's sole allegations of any representations by Milken are that Milken engaged in various deceptive practices to encourage sales of high-risk securities of client companies. The complaint also alleges, in a conclusory fashion, that Milken exercised control over First Capital's investment portfolio. However, Morse has not alleged that plaintiffs were injured by investing in securities about which Milken made misleading statements or omissions. Morse merely alleges that other defendants knew of but denied or omitted to reveal Milken's mismanagement of First Capital's investments and that "[d]efendants' statements to the contrary acted as a fraud upon plaintiff...." Compl. ¶ 64.[3]

---

**3.** Morse's brief baldly asserts several claims which do not appear in the complaint, namely

Morse argues that acts other than statements made directly to investors can and, in this case, did constitute a "manipulative or deceptive device or contrivance" within § 10(b)'s meaning. He claims that Milken's alleged self-interested creation of an artificially inflated junk bond market in which he caused First Capital to invest was inconsistent with the company's best interests, injured plaintiffs and violated § 10(b).

Morse is correct that unusual methods to defraud investors have been held actionable under Section 10(b). *See Competitive Associates, Inc. v. Laventhol, Krekstein, Horwath & Horwath,* 516 F.2d 811, 815 (2d Cir.1975) ("[Section] 10(b) and Rule 10b–5 prohibit *all* fraudulent schemes in connection with the purchase or sale of securities, whether the artifices employed involved a garden type variety of fraud, or present a unique form of deception") (emphasis in original).

However, Morse has failed to identify even an atypical scheme by which Milken defrauded plaintiffs. Plaintiffs complain they were duped into purchasing First Capital stock. They have identified specific misleading statements issued by First Capital upon which they relied, but have complained of no conduct by Milken beyond his alleged maintenance of his "Daisy Chain." The complaint falls short of stating a primary violation of § 10(b) by Milken as to these plaintiffs because its allegations do not establish that Milken's conduct was "in connection with" plaintiffs' purchase of First Capital stock or that his actions caused plaintiffs' injuries within the meaning of § 10(b).

Both the "in connection with" requirement and the causation requirement under § 10(b) concern the nexus between a defendant's behavior and the sale or purchase by which plaintiffs incurred actionable harm. The Court of Appeals for this Circuit has ruled that a plaintiff alleging a broad-based scheme to defraud must "demonstrate causation in fact by showing that defendant's allegedly fraudulent activities were actually responsible for plaintiff's injuries," *Bloor,* 754 F.2d at 61, and "must assert that the 10(b) violations caused the claimed economic loss. This required causal connection may not be supplied by 'but for' allegations." *Id.* (citations omitted).

In the present case, the allegations of Milken's deception are insufficiently connected to plaintiffs' injury to meet the requirements of *Bloor.* The harm alleged was directly caused by the corporation's statements, with which Milken is not alleged to have been involved. The complaint provides no factual assertions that support an inference of or establish that plaintiffs directly relied on Milken's actions as they decided to invest in First Capital or that he intended to deceive them as opposed to First Capital itself. The allegedly misleading statements identified in the complaint maintained that careful portfolio management could minimize the exposure associated with First Capital's high risk (junk bond) investments and that expected high returns justified the investments. While these allegedly deceptive statements, all of which were made by First Capital only, may not have been possible without the existence of an apparently vibrant junk bond market created by Milken, that background fact is precisely the type of "but for" causal factor that *Bloor* instructs is not sufficient to support recovery under § 10(b).

It is true that in some "in connection with" cases, the phrase has been contrued quite broadly. *See, e.g., Superintendent*

that Milken's "'course of business' operated a fraud upon plaintiff," Pl. Brief at 11, that Milken knew that investors would rely on the sham market he allegedly created in purchasing shares in companies that invested in his financial products, Pl. Brief at 13, and that plaintiffs so relied to their detriment. Pl. Brief at 4. The first observation is so conclusory that even if it appeared in the complaint it would add nothing to the allegations already included in it; the other two, if properly pled, might come closer

to alleging that Milken defrauded First Capital's investors. Even if these belated claims appeared in the complaint, however, there would be some doubt whether the alleged acts were "in connection with" plaintiffs' purchase of First Capital stock or caused their injuries. Moreover, the brief's casual statements concerning Milken's knowledge would be insufficient under Rule 9(b) even if they were included in the complaint.

*of Insurance v. Bankers Life & Casualty Co.*, 404 U.S. 6, 12–13, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1971) (connection sufficient where deceptive practices "touch" sale of securities). Nevertheless where the "transactional nexus" between a defendant's conduct and a plaintiff's purchase or sale of securities is not established, the claim is not viable. *See In re Financial Corp. of America Shareholder Litigation*, 796 F.2d 1126, 1129–30 (9th Cir.1986) (insufficient "transactional nexus" where defendant accounting firm recommended accounting method subsequently ruled unacceptable by SEC for asset purchase by plaintiff client). Judged by this rule Milken's alleged actions were simply not "in connection with" plaintiffs' purchase of First Capital securities, as that phrase is used in § 10(b) of the Act.

Accordingly, Morse's claim against Milken for a primary violation of § 10(b) does not satisfy Rule 12(b) and is dismissed.

### 2. Aider and Abettor Liability

■ To state a cause of action for aiding and abetting the alleged securities fraud, Morse must allege the following:

(1) the existence of a securities law violation by the primary (as opposed to the aiding and abetting) party;

(2) "knowledge" of this violation on the part of the aider and abettor; and

(3) "substantial assistance" by the aider and abettor in the achievement of the primary violation.

*IIT, International Invest. Trust v. Cornfeld*, 619 F.2d 909, 922 (2d Cir.1980). Milken argues that the complaint does not sufficiently allege any of these elements as to him.

To begin with Milken contends that the complaint merely alleges corporate mismanagement (in First Capital's failure to establish adequate reserves or invest more prudently) rather than fraud. The argument is not persuasive. The complaint plainly and repeatedly alleges that the defendants caused First Capital to issue statements that its sophisticated management practices adequately safeguarded against the kind of loss eventually suffered by the company and its shareholders when in fact defendants knew that no adequate protections were in place, and that these representations induced plaintiffs to invest detrimentally in First Capital. That allegation states a cause of action for fraud against the primary actors, who were principal owners and officers of First Capital.

■ Milken argues next that the complaint contains no allegation that Milken knew that First Capital was inducing investors to purchase its shares by disseminating the allegedly misleading statements. While Morse's brief now states that "Milken and Weingarten are alleged to have intentionally misrepresented [First Capital's] financial condition . . .", as discussed above there is no allegation in the complaint that Milken made or participated in misrepresentations directly to plaintiffs, nor is there any other allegation which supports the proposition that Milken knew of fraudulent misrepresentations made by others. Accordingly, despite the provision of Fed.R.Civ.P. 9(b) stating that "Malice, intent, knowledge and other condition of mind of a person may be averred generally," Morse's pleadings as to Milken's knowledge are insufficient under Rules 9(b) and 12(b).

Milken also challenges the sufficiency of Morse's claim that Milken substantially assisted the primary actors in their scheme to defraud plaintiffs. Milken's argument presents a close question, particularly under Rule 9(b), although Morse does provide at least a conclusory allegation that Milken's manipulation of the junk bond market facilitated the primary actors' misconduct. In light of the above conclusion that Morse has not alleged Milken's knowledge of First Capital's misrepresentations and misleading omissions, no more definite resolution of the substantial assistance question is necessary.

Because of Morse's failure adequately to allege Milken's knowledge of the primary violations, Morse's claim that Milken aided and abetted others' violation of the securities laws is dismissed pursuant to Rules 9(b) and 12(b).

### 3. Control Person Liability

█ Section 20(a) of the Securities Exchange Act provides, "Every person who, directly or indirectly, controls any person liable under any provision of this chapter ... shall also be jointly and severally liable with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a).

█ As with claims of liability for aiding and abetting a securities law violation, to assert a "control person" claim pursuant to § 20(a) plaintiffs must allege the existence of a primary violation and defendant's knowledge of that violation. *See Bernstein v. Crazy Eddie, Inc.,* 702 F.Supp. 962, 979 (E.D.N.Y.1988), *vacated in part on other grounds sub nom. In re Crazy Eddie Securities Litigation,* 714 F.Supp. 1285 (E.D.N.Y.1989). Plaintiffs also "must plead that the defendant had 'the power to exercise control over the primary violator, based on a special relationship such as agency or stock ownership.'" *Id.* (quoting *Index Fund, Inc. v. Hagopian,* 609 F.Supp. 499, 506 (S.D.N.Y.1985)).

As discussed above, Morse has not made the requisite allegation of Milken's knowledge pursuant to Rule 12(b).

Moreover, Morse has not alleged sufficiently that Milken enjoyed any power whatsoever over First Capital's actions. The complaint does make the conclusory statement that Milken exercised control over First Capital's investments in furtherance of his "Daisy Chain," but does not identify any position or title that Milken held at First Capital, nor does it identify any meetings which he attended or conversations which he had with any of the company's officers. Even allowing for the leniency of our pleading rules, Morse's allegations are insufficient.

Accordingly, Morse's claim of Milken's control person liability is dismissed pursuant to Rule 12(b).

### 4. Conspiracy

█ To state a claim of conspiracy, the complaint must allege "an agreement between two or more persons to accomplish an unlawful purpose, their intentional participation in the furtherance of the plan or purpose, and the resulting damage." *First Federal Savings & Loan Ass'n v. Oppenheim, Appel, Dixon & Co.,* 629 F.Supp. 427, 443 (S.D.N.Y.1986).

We have searched the complaint for allegations of conspiracy between Milken and the principal actors and have found only the vague statement, "Each of the defendants is liable as a direct participant in, as a co-conspirator and as an aider and abettor of the wrongs complained of herein." Compl. at ¶ 70.[4] This allegation is totally inadequate because the complaint does not anywhere identify any conspiratorial agreement involving Milken.

One cannot agree to what one does not know. Because Morse has not alleged Milken's knowledge of primary violations, it follows that Milken has not sufficiently been alleged to have joined into a conspiracy to accomplish those violations. Although plaintiffs contend that their claims of an agreement between Milken and Weingarten to further the "Daisy Chain" by causing First Capital to invest in high risk bonds state a conspiracy claim, it remains the case that such a conspiracy, if it did exist, would have as its victims First Capital itself (through its investment in overvalued Milken products) and perhaps more broadly all investors in high risk securities which allegedly were overvalued as a result of Milken's efforts to inflate the market for such securities. The plaintiffs in this suit, however, were harmed not by investing in Milken products but by investing in First Capital stock.

---

**4.** Morse's brief does not identify any specific passage of its complaint as supporting his conspiracy claim.

Accordingly, Morse's claim that Milken conspired to violate the securities laws is dismissed pursuant to Rule 12(b).

### B. Fraud and Negligent Misrepresentation

■ Morse's second and third causes of action are for common law fraud and negligent misrepresentation under New York law.

■ To state a claim for common law fraud in New York, a plaintiff must allege 1) the defendant's misrepresentation or omission of a material fact, 2) the defendant's intent to deceive plaintiff, 3) justifiable reliance upon the misrepresentation by the defrauded party, and 4) that the plaintiff's injury was caused by the defendant's misrepresentation or omission. *See Idrees v. American University of Caribbean*, 546 F.Supp. 1342, 1346 (S.D.N.Y.1982); *Jo Ann Homes at Bellmore, Inc. v. Dworetz*, 25 N.Y.2d 112, 302 N.Y.S.2d 799, 803, 250 N.E.2d 214, 218 (1969). Because these elements are substantially identical to those governing § 10(b), the identical analysis applies here, and accordingly Morse has failed to allege facts which if proven would support his common law fraud claim. That claim is dismissed.

■ Since Morse has not made allegations which tie Milken to any misrepresentations or omissions which were made, his claim of negligent misrepresentation is dismissed.[5]

### C. Motions to Strike

■ Milken moves pursuant to Rule 12(f) to strike references in the complaint to his criminal conviction and income level.

Rule 12(f) authorizes the striking of "any redundant, immaterial, impertinent, or scandalous matter." Such motions are left to the court's discretion. *See Payne v. Howard*, 75 F.R.D. 465, 467 (D.D.C.1977).

The complaint's reference to Milken's criminal conviction and his income level are immaterial and impertinent to this case, and may be "scandalous." Neither Milken's income nor the outcome of his celebrated criminal prosecution bears remotely on the merits of this case. Reference to those matters serves no purpose except to inflame the reader. Although courts have commented that motions to strike pursuant to Rule 12(f) "are not favored" and should be denied "especially if the presence of the material does not prejudice the moving party," *Schramm v. Krischell*, 84 F.R.D. 294, 299 (D.Conn.1979), here there is no reason to allow those references to remain in the complaint.

### Conclusion

Milken's motion is granted pursuant to Rule 12(b) as well as 9(b) and all claims against him are dismissed. His motion to strike is granted.

It is so ordered.

---

**5.** While this decision dismisses Morse's state law claims, even if those claims were to survive the present motion it would be improvident to exercise pendent jurisdiction over them in the absence of federal claims against Milken where, as here, neither the court nor the parties have yet devoted substantial time or resources to the state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).