PENTLAND USA, INC., and Pentland Group PLC, Plaintiffs,

v.

MILLFELD TRADING CO., INC. and Barry Feldstein, Defendants.

No. 92 Civ. 4480 (LBS).

United States District Court, S.D. New York.

Dec. 15, 1993.

See also 841 F.Supp. 1386.

Lowenthal, Landau, Fischer & Bring, P.C., New York City, for plaintiffs (Lawrence L. Ginsburg and Andrew J. Lorin, of counsel).

Schneck Weltman Hashmall & Mischel, New York City, for defendant Candies, Inc., f/k/a Millfeld Trading Co., Inc. (Edward S. Weltman and Chase A. Caro, of counsel).

Greenberger & Forman, New York City, for defendant Barry Feldstein (Robert W. Forman, of counsel).

## OPINION

SAND, District Judge.

This securities action arises from the June 1991 purchase by plaintiffs Pentland USA, Inc. and Pentland Group PLC (collectively, "Pentland") of shares in defendant Millfeld Trading Co., Inc. ("Millfeld"), a publicly traded Delaware corporation in the primary business of importing and marketing shoes. In early 1992, the price of Millfeld stock collapsed after Millfeld disclosed that it was being investigated by federal prosecutors for systematic underpayment of its Customs duties over the preceding five years. Plaintiffs brought suit shortly thereafter, in June 1992, alleging securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Section 10(b)"), and state common law. Defendants Millfeld and Barry Feldstein, the former President, CEO and chairman of Millfeld, move to dismiss plaintiffs' Amended Complaint on the grounds that it fails to allege fraud with the particularity required by Federal Rule of Civil Procedure 9(b). For the reasons set forth below, we deny defendants' motions.

## BACKGROUND

The relevant facts alleged in plaintiffs' Amended Complaint are as follows.

Through a series of interrelated agreements, plaintiffs purchased 89,552 shares of Millfeld stock in June 1991 (the "Millfeld Shares"). At the time of purchase, the Millfeld Shares were worth $11.17 per share, or approximately $1 million in sum; after, and as a result of, the disclosure of Millfeld's Customs underpayments, the shares fell to $0.91 per share, or approximately $81,205. Accordingly, plaintiffs allege that they were damaged in the amount of the difference, $918,795, by Millfeld's failure to disclose its Customs underpayments. Am.Compl. ¶ 14.

Prior to the June 1991 purchase date, Millfeld issued a series of public and private statements concerning the value of its stock. These statements included filings with the Securities and Exchange Commission, including a Prospectus and Registration Statement, proxy statements, and Forms 10–K and 10–Q. Plaintiffs allege that between 1986 and 1991, Millfeld systematically underpaid its Customs obligations, accumulating a liability of at least $1.9 million by October 1992. Am.Compl. ¶ 43. Accordingly, plaintiffs allege, the statements issued throughout this period, which did not disclose this liability, were materially misleading in that they presented to the public a distorted picture of Millfeld's financial health. Plaintiffs allege that this failure to disclose constituted securities fraud under Section 10(b) and the common law, since "[d]efendants knew, or but for their reckless disregard of the truth would have known, that these earnings reports were materially false and misleading." Am. Compl. ¶ 47.

Plaintiffs allege that, in or before June 1991, before the date of the Pentland stock purchase, the U.S. Customs Service ("Customs") commenced a civil investigation of Millfeld and several of its employees, and notified Millfeld of its intent to audit Millfeld's payments of Customs duties between 1986 and 1991. They allege that, in or after July 1991, after the Pentland stock purchase, Millfeld admitted to Customs that it had underpaid its Customs duties, but that Millfeld did not publicly disclose any of its Customs underpayments, or its accumulated five-year liability, until September 24, 1991. At that date, Millfeld, in a public filing with the

SEC, stated that it had accrued a Customs obligation of approximately $1.6 million and that Feldstein, its President and CEO at the time, had agreed to indemnify Millfeld for all underpayments. Plaintiffs allege that this disclosure, by materially understating the magnitude of Millfeld's Customs obligations, was materially misleading.

On February 24, 1992, Millfeld announced that Customs and the U.S. Attorney were investigating the activities of Millfeld employees in connection with the Customs underpayment. It announced as well that Customs might assess additional duties and penalties against it and that these amounts might exceed Millfeld's ability to pay and Feldstein's ability to indemnify it. Shortly after this announcement, Millfeld fired Feldstein. The price of Millfeld stock subsequently collapsed, falling from a June 1991 price of approximately $9.625 a share, to a share price of approximately $2.25 on April 27, 1992, and eventually dropping to $0.91 per share on January 28, 1993. Am.Compl. ¶¶ 34, 61.

Plaintiffs brought suit in June 1992. In August 1992, defendants moved to dismiss the Complaint for failure to allege fraud with the particularity required by Rule 9(b). In a hearing on December 10, 1992, this Court granted plaintiffs leave to file an Amended Complaint, with the understanding that the Amended Complaint would be the "definitive" complaint for purposes of this litigation. Pentland filed its Amended Complaint on February 1, 1993, adding allegations intended to support the inference that Millfeld's underpayment of its Customs duties was made with defendants' knowledge or with reckless disregard for the truth. Defendants now move to dismiss the Amended Complaint, alleging that, as before, it fails to plead scienter with the particularity required by Rule 9(b).

Millfeld argues that "no fact is alleged which supports the inference that defendant knew or should have known that any representation was false *when made*." Def.'s Mem. at 2. It claims that the Customs liability was an "unforeseen setback," which "was only discovered by the Company in a self-audit ... *after* Pentland purchased the Com-

pany's stock," *id.* at 2, 3, and so could not have been previously disclosed. Accordingly, it argues, plaintiffs allegations suggest no wrongdoing beyond mere mismanagement or negligence, neither of which is adequate to establish the scienter element required for a Section 10(b) claim.

In response, plaintiffs argue that "there was nothing 'predictive' about Millfeld's Customs obligations," Pls.' Mem. at 2–3—that these obligations were not unquantifiable "risks" of doing business but instead were clearly quantifiable obligations resting on straightforward calculations of the value of the merchandise that Millfeld imported. Accordingly, they argue that the facts in the Amended Complaint give rise to a strong inference that defendants knew of Millfeld's Customs obligations at the time they arose, or recklessly disregarded those obligations.

## DISCUSSION

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity"; but "[m]alice, intent, knowledge and other condition of mind of a person may be averred generally." Thus, allegations of scienter "are not subjected to the more exacting consideration applied to the other components of fraud." *Breard v. Sachnoff & Weaver, Ltd.,* 941 F.2d 142, 143 (2d Cir.1991); *Ouaknine v. MacFarlane,* 897 F.2d 75, 81 (2d Cir.1990); *Connecticut Nat'l Bank v. Fluor Corp.,* 808 F.2d 957, 962 (2d Cir.1987).

■ However, "there must be 'some factual basis for conclusory allegations of intent.' Specifically, '[a]llegations of scienter are sufficient if supported by facts giving rise to a "strong inference" of fraudulent intent.'" *Breard,* 941 F.2d at 143–44 (citations omitted); *O'Brien v. Nat'l Property Analysts Partners,* 936 F.2d 674, 676 (2d Cir.1991) ("[a]n ample factual basis must be supplied to support the charges"); *Connecticut Nat'l Bank,* 808 F.2d at 962 (plaintiffs must plead "circumstances that provide at least a minimal factual basis for their conclusory allega-

tions of scienter"). For Section 10(b) purposes, scienter includes recklessness. *Breard,* 941 F.2d at 144; *IIT, Int'l Invest. Trust v. Cornfeld,* 619 F.2d 909, 923 (2d Cir.1980).

On a motion to dismiss, we must read the complaint generously, and draw all inferences in favor of the plaintiff. *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989). Allegations "may be based on information and belief when facts are peculiarly within the opposing party's knowledge." *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir. 1990).

■ Applying these standards, we find that the Amended Complaint satisfies the requirements of Rule 9(b). In particular, the following facts alleged in the Amended Complaint give rise to a "strong inference of fraudulent intent": (1) Customs duties are affirmative, quantifiable legal obligations on importers (Am.Compl. ¶ 49), and importing was Millfeld's primary business (Am.Compl. ¶ 3), so defendants should have had knowledge of Millfeld's Customs obligations; (2) defendants engaged in a continuous and prolonged pattern of misrepresentations, giving rise to an inference of recklessness (Am. Compl. ¶¶ 45–55); and (3) Feldstein was, for the entire period of Millfeld's alleged Customs underpayments, the president, CEO and chairman of Millfeld and controlled over 49 percent of its common stock, and thus had intimate knowledge of, and control over, Millfeld's business during the relevant time period, as well as a strong motive to keep Millfeld's profits appearing healthy (Am.Compl. ¶¶ 24–30).

Since we find that these facts alleged in the Amended Complaint give rise to a "strong inference of fraudulent intent," defendants' motions to dismiss the Amended Complaint are DENIED.[1]

The parties are to advise the Court in writing on or before January 17, 1994 when all discovery will be completed, a pretrial

---

1. The motions to dismiss are denied with regard to plaintiffs' state law claims as well as their Section 10(b) claims, as defendants do not make

any separate arguments for dismissal of the state claims.

order submitted, and the parties will be ready for trial.

SO ORDERED.