FOOD AND ALLIED SERVICE TRADES DEPARTMENT, AFL–CIO, on behalf of itself and all others similarly situated, Plaintiff,

v.

MILLFELD TRADING CO., INC., Barry Feldstein, Glenn Feldstein, Dale Whitney, Terren S. Peizer, and Michael Callahan, Defendants.

No. 92 Civ. 5316 (LBS).

United States District Court, S.D. New York.

Jan. 5, 1994.

David, Anderson & Rottenberg, P.C. (Mark M. Rottenberg, of counsel), Friedman & Kaplan, New York City (Eric Seiler, Robert D. Kaplan, Laura S. Fitzgerald, of counsel), for plaintiff.

Schneck Weltman Hashmall & Mischel, New York City (Chase A. Caro, of counsel), for defendants Candies, Inc., f/k/a Millfeld Trading Co., Inc., Terren S. Peizer, and Michael Callahan.

Greenberger & Forman, New York City (Robert W. Forman, of counsel), for defendants Barry Feldstein and Dale Whitney.

Ross, Suchoff, Taroff, Egert & Hankin, P.C., New York City (Brian K. Suchoff, of counsel), for defendant Glenn Feldstein.

## OPINION

SAND, District Judge.

Plaintiff Food and Allied Service Trades Department, AFL–CIO ("FAST"), brought this securities class action on behalf of itself and a class of similarly situated shareholders of defendant Millfeld Trading Co., Inc. ("Millfeld"). Millfeld is a Delaware corporation in the primary business of importing and marketing shoes; it went public in January 1990. In early 1992, the price of Millfeld stock collapsed after Millfeld disclosed that it was being investigated by federal prosecutors for systematic underpayment of its Customs duties over the preceding five years (the "Announcement").

This collapse of Millfeld stock, not surprisingly, produced more than one lawsuit against the company and its directors. Two such cases against Millfeld and its officers are before this Court—the instant suit brought by FAST in July 1992, and another one filed a month earlier by plaintiffs Pentland USA, Inc. and Pentland Group PLC (collectively, "Pentland"). Both suits arise out of the same underlying transactions by Millfeld, and both allege securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), Rule 10b–5, and state common law.

In both cases, defendants moved to dismiss plaintiffs' complaint on the grounds that it failed to allege fraud with the particularity required by Federal Rule of Civil Procedure 9(b). In a hearing on December 10, 1992, this Court granted defendants' motions in both cases and gave plaintiffs leave to file amended complaints in both actions.

Plaintiffs in both actions filed their amended complaints on February 1, 1993, both of them adding allegations intended to support what had been lacking in the original complaints—the inference that Millfeld's underpayment of its Customs duties was made with scienter, that is, with defendants' knowledge or with reckless disregard for the truth. Defendants in both actions moved to dismiss the amended complaints, alleging that, as before, they failed to plead fraud with the particularity required by Rule 9(b). By Opinion dated December 15, 1993 (the *"Pentland* Opinion"), we denied the motions to dismiss in the *Pentland* action.[1] For the reasons set forth below, we now deny defendants' motions to dismiss this action, with the exception of the motion to dismiss made by defendant Terren Peizer, which is granted. Familiarity with the *Pentland* Opinion is assumed.

## DISCUSSION

This action resembles the *Pentland* action in most material respects. In particular, both actions arise from the same set of underlying transactions, and the complaints in both actions allege essentially the same set of material facts. The fundamental differences between the two actions are twofold:

1) FAST brings this action as representative of a class. The named class comprises all shareholders who purchased shares of Millfeld common stock between January 19, 1990, the date on which Millfeld went public, and April 27, 1992, the date on which it claims the market fully assimilated Millfeld's February 1992 disclosure of its Customs underpayments; and

2) While Pentland named as defendants only Millfeld and Barry Feldstein, Millfeld's former CEO, president and chairman, FAST names four additional individual defendants who were officers and/or directors of Millfeld during the relevant time period.[2]

The first distinction—the class nature of this action—has no bearing on the motions to dismiss. As to the second distinction, we will treat the motions to dismiss in two groups—those brought by defendants who were also defendants in the *Pentland* action (the *"Pentland* defendants"), and those brought by defendants not named in *Pentland* (the "non-*Pentland* defendants").

## I. *The Pentland Defendants*

Millfeld and Barry Feldstein are the defendants named in both *Pentland* and this action. As noted above, by Opinion dated December 15, 1993 we denied these two defendants' motions to dismiss in the *Pentland* action. Finding no material differences between the two matters with respect to these common defendants, we now adopt the reasoning of the *Pentland* Opinion with regard to these two defendants, and we deny the motions to dismiss made by Millfeld and Barry Feldstein in this action.

## II. *The Non–Pentland Defendants*

Having concluded that FAST has adequately alleged a "primary" violation of Section 10(b) with regard to Millfeld and Barry Feldstein, we now address issues of "secondary" liability with regard to the remaining defendants. FAST offers two theories of secondary liability under the Exchange Act for the remaining defendants: first, that they incurred liability as "controlling persons" under Section 20(a) of the Exchange Act; second, that they "aided and abetted" the primary violators.

### A. *The Defendants*

The remaining defendants are described as follows in the Amended Complaint:

1) Glenn Feldstein, a son of Barry Feldstein, was Vice President of Sales, Secretary, and a director of Millfeld from 1989 to about February 1992, when he was terminated from these positions in the wake of the Announcement. The Amended Complaint alleges that he was the subject of an ongoing criminal investigation by the United States

---

**1.** *Pentland USA, Inc. v. Millfeld Trading Co., Inc.,* 841 F.Supp. 1383 (S.D.N.Y.1993).

**2.** Two additional defendants—outside directors Steven Gold and Ronald Nigro—were named in the original complaint but dropped from the Amended Complaint.

Attorney in connection with Millfeld's Customs underpayments since February 1992 or before.

2) Dale Whitney became Vice President of Operations and Treasurer of Millfeld in 1981, and became a director in August 1989. He was terminated as Vice President and Treasurer and resigned from the Board in February 1992. The Amended Complaint alleges that he was also the subject of a criminal investigation by the United States Attorney.

3) Michael Callahan became Vice President of Finance, Chief Financial Officer, and a director of Millfeld in 1989. He became President and Chief Executive Officer in or about April 1992, after Barry Feldstein was terminated from both of those positions in the wake of the Millfeld stock collapse.

For each of these three defendants, the Amended Complaint alleges that by virtue of the positions they held throughout the relevant period the defendants "exercised control over Millfeld—including over the Company's Customs practices and financial disclosure obligations relating thereto—and initiated, participated in, knew about, and permitted the wrongs alleged herein." Am.Compl. ¶¶ 13, 14, 16.

4) Terren Peizer is the one individual defendant who was not an officer of Millfeld during the relevant period; in addition, he was also not a director for much of the relevant time. Peizer became a director in June 1991 when he purchased $3.5 million worth of convertible debentures from Millfeld. He had by that time already purchased 135,000 shares of Millfeld common stock in the open market, and when he became a director he received warrants to purchase 1,118,436 shares of Millfeld common stock at $10.00 per share. Peizer resigned as a director on or about February 20, 1992, following the Announcement.

Peizer divested himself of over 90 percent of his Millfeld stock on September 23, 1991, one day before Millfeld first publicly acknowledged that it had materially underpaid its Customs obligations since 1986 and faced a $1.6 million liability. The Amended Complaint alleges:

Peizer's timely divestment of his Millfeld stock, along with the fact of his positions as Millfeld director and major stockholder after June of 1991, support the inference that Terren Peizer exercised control over Millfeld ... and initiated, participated in, knew about, and permitted the wrongs alleged herein.

Am.Compl. ¶ 15.

The Amended Complaint alleges fraud by each of the defendants as follows:

The individual defendants, by virtue of their offices, directorships, stockholdings, and/or specific acts were, at the time of the wrongs alleged herein, controlling persons of Millfeld within the meaning of Section 20(a) of the Exchange Act. Each such defendant had and exercised the power and influence to cause Millfeld to engage in the illegal practices complained of herein. Each of the individual defendants is sued as a direct participant in the wrongdoing alleged herein and in his capacity as a controlling person of Millfeld.

Am.Compl. ¶ 17.

**B.** *"Controlling Person" Liability under Section 20(a) of the Exchange Act*

Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), provides that:

Every person who, directly or indirectly, controls any person liable under any provision of [the Exchange Act] or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

This provision imposes secondary liability under the Exchange Act on so-called "controlling persons" of entities in violation of the Act who fail to show that they acted in "good faith."

■ Defendants argue that, in order to establish a *prima facie* claim of controlling person liability under Section 20(a), FAST must plead more than mere "control by status" as an officer, director, or shareholder;

that it must "allege[ ] that the 'control person' was in some meaningful sense a culpable participant in the fraud perpetrated." Mem. of Glenn Feldstein at 9.[3] FAST responds that culpable participation need not be pleaded; that all that is required to make out a *prima facie* case of "controlling person" liability at the pleading stage is an allegation of "control status," that is, that each defendant held a position in the corporation from which control could be inferred. We agree with FAST, for the reasons set out below.

As the cases cited by all parties to this action make clear, courts within the Second Circuit have not ruled consistently as to whether scienter or culpable participation must be pleaded in order to state a claim for Section 20(a) liability. One line of cases, drawing on the Second Circuit's opinion in *Marbury Management, Inc. v. Kohn*, 629 F.2d 705, 716 (2d Cir.), *cert. denied*, 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980), holds that neither scienter nor culpable participation are required to make out a *prima facie* case of control person liability—that all that is required is an allegation of control status. *See Borden, Inc. v. Spoor Behrins Campbell & Young, Inc.*, 735 F.Supp. 587 (S.D.N.Y.1990); *In re Citisource, Inc. Sec. Litig.*, 694 F.Supp. 1069, 1076 (S.D.N.Y. 1988); *Terra Resources I v. Burgin*, 664 F.Supp. 82 (S.D.N.Y.1987); *Polycast Technology Corp. v. Uniroyal*, [Current] Fed.Sec. L.Rep. (CCH) ¶ 94,005, 1988 WL 96586 (S.D.N.Y.1988); *Savino v. E.F. Hutton & Co.*, 507 F.Supp. 1225, 1243 (S.D.N.Y.1981).

Defendants point to a separate line of cases requiring the pleading of something more than control status to sustain a Section 20(a) claim. *See, e.g., Morse v. Weingarten*, 777 F.Supp. 312, 318 (S.D.N.Y.1991) (requiring plaintiff to plead defendant's knowledge of primary violation); *In re Par Pharmaceutical, Inc. Sec. Litig.*, 733 F.Supp. 668, 679 (S.D.N.Y.1990) (plaintiffs must allege that defendants were "in some meaningful sense culpable participants in the fraud perpetrated by controlled persons"); *Bernstein v. Crazy Eddie, Inc.*, 702 F.Supp. 962, 979 (E.D.N.Y.1988), *vacated in part on other*

grounds *sub nom. In re Crazy Eddie Sec. Litig.*, 714 F.Supp. 1285 (E.D.N.Y.1989) (requiring plaintiff to plead defendant's knowledge); *Harrison v. Enventure Capital Group, Inc.*, 666 F.Supp. 473, 478 (W.D.N.Y. 1987) (culpable participation must be alleged).

This split within the Second Circuit was thoroughly analyzed in two of the cases cited above. *See Borden*, 735 F.Supp. at 588–90; *In re Citisource*, 694 F.Supp. at 1076–77. We agree with those courts' well-reasoned opinions, and with their conclusion that all that is required to make out a *prima facie* case of controlling person liability at the pleading stage is an allegation of control status.

As the court noted in *Borden*, 735 F.Supp. at 590, a requirement that plaintiffs allege more than control status confuses what is required to establish control liability at trial or summary judgment and what is required to make out a *prima facie* case of control liability at the pleading stage. Requiring plaintiffs to allege more than control status in their complaint would erroneously import into the pleading stage the Second Circuit's standard of proof at trial, where liability is assigned only to those controlling persons "who are in some meaningful sense culpable participants in the fraud perpetrated by controlled persons." *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1299 (2d Cir.1973) (en banc).

While *Lanza* requires proof of culpable participation at the trial and summary judgment stage, *Marbury Management*, 629 F.2d at 716, establishes that once plaintiffs have pleaded control status, the burden shifts to defendants to prove that they acted in good faith. Thus, knowledge and culpability are not elements of a *prima facie* case; instead, their absence constitutes an affirmative defense. *Borden*, 735 F.Supp. at 589; *Citisource*, 694 F.Supp. at 1077; *Terra Resources*, 664 F.Supp. at 88. This being the case, "it would seem imprudent to construct a pleading requirement that demands that plaintiffs anticipate and negate an alleged controlling person's good faith defense. by pleading detailed facts to show the control-

---

**3.** Glenn Feldstein is the only defendant to make this argument, but we will treat the argument as

made on behalf of all defendants.

ler's culpability." *Terra Resources*, 664 F.Supp. at 88.

### C. *Applying the "Control Status" Standard*

Having concluded that Section 20(a) requires FAST to allege control status only, we now examine whether FAST has done so adequately with regard to all non-*Pentland* defendants. While the Exchange Act does not define "control," the SEC has defined control as "the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a [violator], whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 240.12(b)–2(f).

■ FAST's allegations with regard to defendants Whitney, Callahan, and Glenn Feldstein clearly meet this standard. These defendants' positions, as Treasurer, Chief Financial Officer, and Secretary of Millfeld throughout the relevant period, strongly suggest that each of them possessed the power to direct the management and policies of Millfeld during this period and that each was involved as well in the preparation or review of Millfeld's public statements during this period. Thus, we conclude that FAST has adequately pleaded control status, and therefore a Section 20(a) claim, with regard to these three defendants.

■ Defendant Peizer presents a closer question, and one that is made more difficult by the absence of separate briefing or argument regarding his status.[4] Unlike the three above-mentioned defendants, Peizer was not an officer of Millfeld during the relevant period of January 1990 to April 1992, and he only became a director in June 1991, when he made a large purchase of Millfeld convertible debentures. FAST does not allege that Peizer possessed a controlling block of Millfeld stock, and does not include enough information about Millfeld's outstanding securities from which one could draw this inference. FAST also does not allege that Peizer was involved in Millfeld's day-to-day operations or that he had anything to do with the prepa-

ration or review of Millfeld's public statements during the relevant period, and one cannot reasonably infer such involvement from his position as an outside director.

FAST alleges instead that "Peizer's timely divestment of his Millfeld stock [one day before Millfeld's announcement of Customs underpayments], along with the fact of his positions as Millfeld director and major stockholder after June of 1991, support the inference that Terren Peizer exercised control over Millfeld ... and initiated, participated in, knew about, and permitted the wrongs alleged herein." Am.Compl. ¶ 15.

While courts in this circuit have not always agreed on just how much beyond status as a director must be alleged to plead a Section 20(a) claim, *see supra*, they have agreed that a bare allegation of director status, without more, is insufficient. *In re Par Pharmaceutical, Inc. Sec. Litig.*, 733 F.Supp. 668, 679 (S.D.N.Y.1990) ("a person's status as a director does not alone amount to the requisite power to control"); *Hemming v. Alfin Fragrances, Inc.*, 690 F.Supp. 239, 245 (S.D.N.Y. 1988) ("a party's status as an officer, director or shareholder, absent more, is not enough"). At a minimum, the corporate positions held by defendants, along with any other allegations of a special relationship to the primary violator, must support a reasonable inference "that they had the potential power to influence and direct the activities" of the primary violator. *Borden*, 735 F.Supp. at 591. That was true with regard to the officer defendants discussed above: one could reasonably infer from FAST's allegations that their corporate positions gave them responsibility over the day-to-day operations of Millfeld and over the preparation or review of Millfeld's public statements.

The question presented here is whether FAST has alleged any facts with regard to Peizer that would lead one to draw similar inferences—in particular, whether Peizer's "timely divestment" of stock, which supports an inference of inside knowledge, is sufficient to furnish the "more" which is required under these precedents beyond the bare allega-

---

**4.** Peizer did not submit a separate memorandum of law but moved instead on the basis of a memorandum submitted jointly by Millfeld, Callahan, and himself, which failed to address Section 20(a) liability as an issue distinct from the

company's primary liability. The one other memorandum filed by defendants, the memorandum of Glenn Feldstein, addressed the Section 20(a) issue, but of course as it applied to Feldstein's circumstances rather than Peizer's.

tion of director status and stock ownership. Although this question is not free from doubt, we hold that it is not sufficient.

We do not find the permissible inferences from the timing of Peizer's divestment of his Millfeld stock to be as broad as FAST contends. While FAST's allegation of Peizer's "timely divestment" of his Millfeld stock certainly supports an inference that Peizer possessed inside knowledge about Millfeld, it does not, in and of itself, support an inference that he exercised control over Millfeld's management. The fact that Peizer may have known of the imminent disclosure immediately before disposing of his stock does not establish the duration of his knowledge, or its extent. Indeed, it is at least as reasonable to assume that his divestment was prompted by his recent discovery of facts of which he had not previously had knowledge, let alone control, as to assume that this action was indicative of longstanding knowledge and control.[5]

Accordingly, we conclude that FAST has failed to allege Peizer's control status adequately and so has failed to state a claim under Section 20(a).

### D. *Aiding and Abetting*

Our reasoning with regard to FAST's Section 20(a) claims supports the same conclusions with regard to its aiding-and-abetting claims.

To state a cause of action for aiding and abetting, a plaintiff must allege the following:

(1) the existence of a securities law violation by the primary (as opposed to the aiding and abetting) party;

(2) "knowledge" of this violation on the part of the aider and abettor; and

(3) "substantial assistance" by the aider and abettor in the achievement of the primary violation.

*IIT, Int'l Invest. Trust v. Cornfeld,* 619 F.2d 909, 922 (2d Cir.1980); *Morse v. Weingarten,* 777 F.Supp. 312 (S.D.N.Y.1991).

■ FAST has, of course, alleged a primary violation of the securities laws by Millfeld and Barry Feldstein. Giving FAST the benefit of all reasonable inferences, as we must on a motion to dismiss, we conclude that the allegations that support FAST's claim of controlling person liability against defendants Whitney, Callahan, and Glenn Feldstein suffice as well to support the Amended Complaint's allegations of knowledge and substantial assistance by those defendants, and hence of aiding-and-abetting liability.

■ With regard to defendant Peizer, we conclude likewise that the reasoning above controls; the allegations that fail to adequately support Peizer's control status fail as well to support FAST's claim that Peizer provided "substantial assistance" in Millfeld's alleged securities violations.

### E. *Remaining Issues*

Defendants move also to dismiss FAST's state common law claims for fraud and negligent misrepresentation. As defendants do not argue any separate grounds for dismissal of these claims, we deny these motions.

■ Additionally, defendant Glenn Feldstein moves, pursuant to Federal Rule of Civil Procedure 12(f), to strike as "immaterial and impertinent" and potentially "scandalous" all allegations in the Amended Complaint that Feldstein is the subject of a criminal investigation. Resolution of Rule 12(f) motions is left to the court's discretion. *Morse v. Weingarten,* 777 F.Supp. 312, 319 (S.D.N.Y.1991). "Such motions are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation." *Schramm v. Krischell,* 84 F.R.D. 294, 299 (D.Conn.1979). We do not find this standard to be met, and accordingly we deny Feldstein's motion to strike.

### CONCLUSION

For the reasons set forth above, we deny defendants' motions, with the exception of the motion to dismiss made by defendant Peizer, which is granted. We grant FAST leave to amend the Amended Complaint in order to clarify the issue of Peizer's secondary liability, under either a controlling-person or an aiding-and-abetting theory. Although, under our oral ruling of December

---

**5.** Since this is a motion to dismiss addressed solely to the face of the Amended Complaint, we give no consideration to the explanation of this transaction proffered by Peizer in defendants' brief and exhibits thereto. *See* Memorandum of Law of Defendants Candies, Inc., et al., at 11–12.

10, 1992, the Amended Complaint was to be the "definitive" complaint in this action, the absence of separate focus, briefing, or oral argument on the issue of Peizer's status leads us to conclude that additional attention from the parties as to this defendant is required before we can definitively rule on his motion.

We grant FAST twenty days from the date of this Opinion to submit a final Second Amended Complaint, which is to differ from the Amended Complaint only insofar as may be needed to clarify the issue of Peizer's secondary liability. Along with the Second Amended Complaint, FAST may submit such supplemental briefing as it deems appropriate to address this particular issue. Defendant Peizer then has two weeks from the date he is served with FAST's papers to renew his motion to dismiss and to submit a supporting brief on this issue. Peizer's motion will be considered fully submitted upon submission of the above papers, which will be treated as supplemental to the previously submitted briefs.

SO ORDERED.