**In re FINE HOST CORPORATION SECURITIES LITIGATION.**

No. 1241.
No. 3:97–CV–2619 (JCH).

United States District Court,
D. Connecticut.

Oct. 22, 1998.

J. Daniel Sagarin, Elias A. Alexiades, Hurwitz & Sagarin, Milford, CT, Phyllis M. Parker, Berger & Montague, Philadelphia, PA, Peter A. Lennon, Joseph P. Guglielmo, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for Bernard Indart, Mark Zinn, James Cosentino, Rodman Ins Agency, Edward Pirro, Robert R. Glisson, Peter P. Debiase, Cosmo Debiase, Taam Assoc., Inc.

Peter A. Lennon, Joseph P. Guglielmo, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for Doreen Stellke Levine.

Phyllis M. Parker, Berger & Montague, Philadelphia, PA, Peter A. Lennon, Joseph P. Guglielmo, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, David Randell Scott, Colchester, CT, for Paul Zwynenburg, Richard Orenstein, Robert Askew.

Phyllis M. Parker, Berger & Montague, Philadelphia, PA, Peter A. Lennon, Joseph P. Guglielmo, Milberg, Wreiss, Bershad, Hynes & Lerach, New York City, Jeffrey S. Nobel, Schatz & Nobel, Hartford, CT, for Donna Goode, Roland Burke.

Phyllis M. Parker, Berger & Montague, Philadelphia, PA, Peter A. Lennon, Joseph P. Guglielmo, Milberg, Wreiss, Bershad, Hynes & Lerach, New York City, David Randell Scott, Colchester, CT, for Paul Zwynenburg, Richard Orenstein, Robert Askew.

Phyllis M. Parker, Berger & Montague, Philadelphia, PA, Peter A. Lennon, Joseph P. Guglielmo, Milberg, Wreiss, Bershad, Hynes & Lerach, New York City, Andrew M. Schatz, Schatz & Nobel, Hartford, CT, for Terry Wright.

Phyllis M. Parker, Berger & Montague, Philadelphia, PA, Peter A. Lennon, Joseph P. Guglielmo, Milberg, Wreiss, Bershad, Hynes & Lerach, New York City, James E. Tolan, Nancy Prahofer, Joel H. Levitin, Steven D. Isser, Dechert Price & Rhoads, New York City, for Mainstay Funds, Mainstay VP Series Fund, Inc., New York Life Ins. Co.

William H. Narwold, Cummings & Lockwood, Hartford, CT, Timothy G. Ronan, Cummings & Lockwood, Stamford, CT, Shaun S. Sullivan, David B. Fein, Wiggin & Dana, New Haven, CT, Suzanne Ellen Wachsstock, Wiggin & Dana, Stamford, CT, for Fine Host Corp.

Richard F. Lawler, Whitman, Breed, Abbott & Morgan, Greenwich, CT, Philip M. Smith, David S. Patterson, Whitman, Breed, Abbott & Morgan, New York City, for Richard E. Kerley.

Timothy G. Ronan, Cummings & Lockwood, Stamford, CT, for Catherine B. James.

Carl H. Loewenson, Jr., Heather M. Benedict, Morrison & Foerster, New York City, Steven David Ecker, Thomas J. Murphy, Cowdery & Ecker, Hartford, CT, for Cynthia J. Robbins.

Eugene J. Riccio, Gulash & Riccio, Bridgeport, CT, Jack A. Gordon, John M. DeMitt, Kent, Beatty & Gordon, New York City, for Nelson A. Barber.

Margaret M. Donohoe, J. Jay Lobell, Howard, Smith & Levin, New York City, for Mary B. Griffin.

## RULING ON DEFENDANTS' MOTIONS TO DISMISS

HALL, District Judge.

Eight motions by five different defendants to dismiss various parts of the Consolidated Amended Class Action Complaint (the "Class Complaint") and the Second Amended Complaint (the "MainStay Complaint") are now pending before this court. [Dkt.# s 41, 43, 45, 47, 59, 81, 82, 83]. For the following reasons, the motions of Kerley, Barber, and Fine Host to dismiss Count I of the Class Complaint [Dkt.# 41, 43, 47] are DENIED; the motions of Griffin and Robbins to dismiss the entire Class Complaint as to them [Dkt.# s 45, 59] are GRANTED; and the motions by Kerley, Barber, and Fine Host to dismiss various portions of the MainStay

Complaint [Dkt .# s 81, 82, 83] are GRANTED insofar as they seek to dismiss Count V, but are in all other respects DENIED.

## I. BACKGROUND

### A. The Complaints

This multi-district litigation currently involves two separate actions, the Consolidated Class Action and the MainStay Action. A brief description of the complaint in each action follows.

#### 1. The Class Complaint

The Class Complaint instituted a securities class action on behalf of a putative class consisting of all purchasers of common stock of Fine Host, Inc. ("Fine Host") from June 19, 1996 through December 12, 1997, and on behalf of a putative subclass consisting of all persons who acquired Fine Host stock pursuant or traceable to the Registration Statement and Prospectus issued in connection with Fine Host's initial public offering. Class Complaint at ¶ 1. The Class Complaint names as defendants Fine Host, Richard E. Kerley, Nelson A. Barber, Cynthia J. Robbins, and Mary Bender Griffin. *Id.* at ¶¶ 18–22.

On behalf of the sub-class, Count I of the Class Complaint alleges that the prospectus that Fine Host filed with the SEC in connection with its initial public offering contained false and materially misleading financial information in violation of section 11 of the Securities Act of 1933. *Id.* at ¶¶ 26, 149. In particular, the complaint alleges that as a result of improper accounting practices, the audited financial statements contained in the prospectus materially overstated Fine Host's net income for fiscal 1993, 1994, and 1995. *Id.* at ¶ 46. Count I is brought against defendants Fine Host, Kerley, and Barber only. *Id.* at ¶ 141.

Counts II and III of the complaint are brought on behalf of the entire class. In Count II, plaintiffs allege that all of the defendants violated section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 by knowingly and/or recklessly engaging in fraudulent accounting practices. Plaintiffs allege that through these practices, defendants artificially inflated Fine Host's stock price based on a showing of profits which in actuality were losers. *Id.* at ¶ 152. In Count III, brought against defendants Kerley and Barber only, plaintiffs allege that Kerley and Barber were control persons within the meaning of section 20(a) of the Securities Exchange Act of 1934, and are therefore liable for the underlying violations of the securities laws. *Id.* at ¶¶ 163–164.

#### 2. The MainStay Complaint

In the MainStay Complaint, plaintiffs The MainStay Funds, on behalf of its Convertible Fund, MainStay VP Series Fund, Inc., on behalf of its Convertible Portfolio, and New York Like Insurance Company, on behalf of its Pooled Separate Account No. 7, the Convertible Account, allege five separate causes of action against various combinations of defendants Fine Host, Kerley, and Barber. The claims arise out of plaintiffs' purchase, pursuant to a private offering, of Fine Host subordinated notes (the "Notes") which were convertible into Fine Host common stock. MainStay Complaint at ¶ 1. Plaintiffs allege that in connection with their purchase of the Notes, they relied on materially false and misleading representations made by Fine Host as to the company's financial results for fiscal 1994, 1995, 1996, and the first three quarters of fiscal 1997. *Id.* at ¶ 3.

In Count I, plaintiffs allege that all of the defendants violated section 10(b) of the Securities Exchange Act and Rule 10b–5 by "carr[ying] out a plan, scheme and course of conduct with the illicit goal of raising capital by offering debt at a lower interest rate than the market would demand." *Id.* at ¶ 72. In Count II, brought against Fine Host only, plaintiffs allege that they reasonably relied on the misrepresentations and omissions contained in Fine Host's financial reports and that they are therefore entitled to recover under section 18(a) of the Securities Exchange Act. *Id.* at ¶¶ 80–84. In Count III, plaintiffs seek to hold defendants Kerley and Barber liable as "control persons" under section 20(a) of the Securities Exchange Act. *Id.* at ¶¶ 85–89. In Count IV, plaintiffs allege that all defendants are liable for common law fraud. *Id.* at ¶¶ 90–95. Plaintiff's final cause

of action, Count V, seeks to recover damages from Fine Host and Kerley for making negligent misrepresentations. *Id.* at ¶¶ 96–101. In addition to compensatory damages, costs, and attorneys' fees, plaintiffs request an award of punitive damages in the amount of $500,000. *Id.* at p. 28.

## B. The Motions to Dismiss

### 1. Motions to Dismiss the Class Complaint

Defendants in the Consolidated Amended Class Action have filed motions to dismiss various portions of the Class Complaint. Defendants Fine Host, Barber, and Kerley have each filed a motion to dismiss Count I of the complaint on the ground that the named plaintiffs of the subclass did not purchase their shares in the initial public offering and therefore have no standing to assert a claim under section 11. [Dkts.# s 41, 43, 47]. Defendants Robbins and Griffin have each filed a motion to dismiss the entire complaint as to them. [Dkt.# s 45, 59].

### 2. Motions to Dismiss the MainStay Complaint

Defendants in the MainStay action have moved to dismiss virtually all of the Main-Stay Complaint. [Dkt.# s 81, 82, 83] All three defendants have moved to dismiss Counts I and IV for failure to plead scienter adequately. Defendants Kerley and Barber have also moved to dismiss Counts I and IV on the alternate ground that the complaint fails to plead adequately that plaintiffs relied on the alleged misrepresentations. Defendants Fine Host and Kerley have moved to dismiss Count V for plaintiffs' failure to allege the existence of a "special relationship" between themselves and defendants. Defendants Kerley and Barber have moved to dismiss Count III for failure to state a claim for control person liability. In addition, Fine Host has moved to dismiss plaintiffs' claim for punitive damages.

## II. DISCUSSION

### A. Motions by defendants Kerley, Barber, and Fine Host to dismiss Count I of the Class Complaint

■ Defendants Kerley, Barber, and Fine Host present a single argument in support for their motions to dismiss Count I of the Class Complaint. They argue that plaintiffs lack standing to assert a claim under section 11 because the named plaintiffs who purport to represent the sub-class, Robert Askew and Thomas A. Guarnera, did not purchase their shares in the initial public offering. Defendants argue that under the logic of the United States Supreme Court's holding in *Gustafson v. Alloyd Co.,* 513 U.S. 561, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995), section 11 extends only to securities purchases made in the initial offering and not to those purchased in the secondary market.

Under governing Second Circuit precedent, defendants' argument fails. As has been recently noted by at least one other district court, "[i]t has been the law in this Circuit for over thirty years that a plaintiff who can trace their securities to a registered offering has standing to sue under the Securities Act for a defect in that registration." *Adair v. Bristol Technology Sys., Inc.,* 179 F.R.D. 126, 130 (S.D.N.Y.1998) (citing *Barnes v. Osofsky,* 373 F.2d 269, 272 (2d Cir.1967) (Friendly, J.)). In *Barnes,* the Second Circuit considered the question of whether purchasers on the secondary market who were unable to trace their purchases to a new offering could sue under section 11 for false or misleading statements made in that new offering's registration statement. *Barnes,* 373 F.2d at 271. In holding that such purchasers could not bring an action under section 11, the court interpreted section 11's language granting standing to sue to "any person acquiring such security" to encompass only those plaintiffs who could trace their securities to the offering that contained the challenged registration statement. *Id.* at 272. Purchasers who had purchased securities that were issued under an earlier, non-objectionable registration statement, were held to have no standing to sue under section 11. *Id.*

Defendants argue in effect that the logic of *Gustafson* has overruled *Barnes sub silentio.* This court disagrees. The holding of *Gustafson* in no way compels a result different from that reached in *Barnes.* In *Gustafson,* the

Supreme Court was faced with the question of whether section 12(2), which provides for liability based on misstatements in prospectuses, allows buyers in a private secondary transaction to sue on the basis of recitations in the purchase agreement. *Gustafson,* 513 U.S. at 564, 115 S.Ct. 1061. In holding that such buyers did not have standing to bring an action under section 12(2), the Court relied on both legislative history and language from earlier Supreme Court cases stating that the 1933 Act was concerned with the regulation of public offerings, not private ones. *Id.* at 571–72, 115 S.Ct. 1061. Based on this legislative history, the Court interpreted the term "prospectus" as used in section 12(2) to apply only to those documents that solicited the public to purchase securities from an issuer. *Id.* at 575–76, 115 S.Ct. 1061. Because the purchase agreement at issue in the case had been used in connection with a private secondary transaction and not a public offering, the Court held that it did not fall within the definition of "prospectus" as used in section 12. *Id.* at 584, 115 S.Ct. 1061.

The logic underlying the Supreme Court interpretation of section 12 does not necessarily apply in the same way to section 11. The plain language of the two sections differ in an important way. Section 12 expressly limits recovery to only those purchasers who purchase their shares directly from a seller who makes use of a false or misleading prospectus. 15 U.S.C. § 77*l*(2) (seller "shall be liable to the person purchasing such security from him"). In contrast, section 11 permits recovery by "any person acquiring such security." 15 U.S.C. § 77k. Therefore, the holding of various courts that purchasers have standing under section 12(2) only if they purchased their shares in a public offering rather than in the secondary market, *see, e.g., Glamorgan Coal Corp. v. Ratner's Group PLC,* No. 93 CIV. 7581, 1995 WL 406167 (S.D.N.Y. July 10, 1995), at *2 (col-

lecting cases), is attributable not to the holding of *Gustafson* alone, but to the combination of that holding with section 12's privity requirement. In order to hold a seller of a security liable under section 12, a buyer must have purchased a security that was issued in a public offering (under *Gustafson*) and have purchased it "directly from" the seller (under the plain language of the statute). When one considers these two limitations in combination, it becomes clear that the only plaintiffs who have standing to sue under section 12 are those who have purchased their shares directly from a seller in a public offering.

■ Section 11, however, contains no such privity requirements.[1] The sole question in a section 11 action, therefore, is whether the security purchased by the buyer was issued in connection with a false or misleading registration statement. As is true under section 12 after *Gustafson,* the offering must have been a public one. Of course, this was so with regard to section 11 even before *Gustafson.* If the offering had not been public, no registration statement would exist that could be alleged to be fraudulent or misleading. However, to say that the securities in question must have been issued publicly is not equivalent to saying that the plaintiff must have been their initial purchaser. Unlike section 12, section 11 does not require that the securities be purchased directly from the issuer. In the absence of such a privity requirement in the statute, any purchaser has standing to sue under section 11, so long as the securities purchased can be traced to the offering containing the allegedly defective registration statement. *Barnes,* 373 F.2d at 272; *see also Schwartz v. Celestial Seasonings, Inc.,* 178 F.R.D. 545, 556 (D.Colo.1998). Because *Gustafson* therefore does not overrule *Barnes,* either directly or by necessary implication, this court is bound by the Second Circuit's decision.

Under *Barnes,* plaintiffs have easily satisfied their pleading burden. It is undisputed

---

1. Section 11 provides in pertinent part:

   In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may, either at law or in equity, in any court of competent jurisdiction, sue [five statutory categories of defendants]. U.S.C. § 77k(a).

that the securities in question were publicly offered. Plaintiffs have alleged in their Complaint that members of the sub-class "acquired shares of Fine Host issued pursuant or traceable to the Registration Statement." Class Complaint at ¶ 146. Plaintiffs have therefore alleged facts sufficient to survive defendants' motion to dismiss Count I.

### B. Motions by defendants Griffin and Robbins to dismiss the Complaint as to them

Defendants Griffin and Robbins argue that Count II of the Complaint, the only count in which they are named as defendants, should be dismissed as to them under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted and under Fed. R.Civ.P. 9(b) for failure to plead fraud with sufficient particularity. They argue that, under the heightened requirements for pleading scienter instituted by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), a plaintiff in an action brought under section 10(b) and Rule 10b–5 must plead specific facts that create a strong inference of either conscious misbehavior or recklessness. In defendants' view, plaintiffs' complaint fails to contain facts that would give rise to such an inference and therefore must be dismissed. In addition, defendant Griffin argues that plaintiffs' allegations are insufficient to state a claim against her for being a primary violator of the securities laws and that, because a defendant may not be held liable for aiding and abetting the securities fraud of another, Count II should be dismissed as to her.

Defendants' motions are granted. The facts alleged by plaintiffs in the Class Complaint, even when construed in their most favorable light, do not adequately allege scienter.[2]

■ In order to comply with Rule 9(b)'s requirement that fraud be pleaded with particularity, "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir.1995). Prior to the passage of the PSLRA, "[a] plaintiff [could]

establish a strong inference of fraudulent intent in two ways: 'either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Chill v. General Electric Company*, 101 F.3d 263 (2d Cir.1996) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994)). There has subsequently been a difference in opinion among the district courts of this circuit as to whether the PSLRA has adopted or altered this standard. Specifically, the courts have split over whether, under the PSLRA, pleading "motive and opportunity" is sufficient to allege scienter. Compare *Novak v. Kasaks*, 997 F.Supp. 425, 430 (S.D.N.Y.1998) (adopting view "that evidence of motive and opportunity no longer suffices to plead scienter"); *In re Baesa Securities Litig.*, 969 F.Supp. 238, 242 (S.D.N.Y.1997) (same); *Norwood Venture Corp. v. Converse, Inc.*, 959 F.Supp. 205, 208–09 (S.D.N.Y.1997) (same) with *On-Bank & Trust Co. v. Federal Deposit Ins. Corp.*, 967 F.Supp. 81, 88 n. 4 (W.D.N.Y.1997) (holding that PSLRA did not alter Second Circuit standard); *Pilarczyk v. Morrison Knudsen Corp.*, 965 F.Supp. 311, 320 n. 8 (N.D.N.Y.1997) (same). This court need not weigh in on this question, however, for even if pleading motive and opportunity generally suffices under the PSLRA, plaintiffs have failed to allege scienter adequately in this case.

■ First, plaintiffs have not adequately pleaded specific facts sufficient to raise a strong inference of either knowledge or conscious recklessness. There are no allegations that either one of the two defendants consciously assisted the perpetration of fraud. Therefore, plaintiffs need to have alleged facts sufficient to raise a strong inference of conscious recklessness. As discussed in detail by the Second Circuit in *Chill v. General Electric Company*, 101 F.3d 263 (2d Cir.1996), this is a "significant burden." *Id.* at 270. As noted in *Chill*, "reckless conduct is, at the least, conduct which is highly un-

---

2. Because Griffin prevails on her scienter argument, her additional argument that plaintiffs

have attempted to hold her liable as an aider and abettor need not be addressed.

reasonable and which represents an extreme departure from the standards of ordinary care ... to the extent of the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Id.* at 269 (quoting *Rolf v. Blyth, Eastman, Dillon & Co.,* 570 F.2d 38, 47 (2d Cir.1978)). In adding a gloss to the phrase "gives rise to a strong inference of fraudulent intent," the court noted in a parenthetical that "recklessness must, in fact, approximate an actual intent to aid in the fraud being perpetrated." *Id.* Regarding accounting problems specifically, the court expressly stated that "[a]llegations of a violation of GAAP provisions ... without corresponding fraudulent intent, are not sufficient to state a securities fraud claim." *Chill,* 101 F.3d at 270.

■ This high standard is simply not met by the allegations in the Class Complaint. As for Griffin, it is alleged that she "was personally aware of Fine Host's capitalization practices," that she "allocated over $10 million of capitalized costs to various contracts using a subjective and unsupported approach in violation of GAAP," and that "[d]espite being aware of several red flags indicating that the Company's accounting practices were improper and that the amounts involved were material, [she] failed to prevent Fine Host's fraudulent financial statements from being publicly disseminated and continued to engage in non-GAAP accounting." Complaint at ¶ 155d. None of these allegations do more than allege that Griffin engaged in accounting practices that were in violation of GAAP. Nowhere does the Complaint allege that she knew the numbers to be false or misleading, or that she deliberately avoided checking into the numbers because she suspected them to be false or misleading. As stated by the Second Circuit in *Chill,* "[f]raud cannot be inferred simply because a [defendant] might have been more curious or concerned about the activity [in question]." *Chill,* 101 F.3d at 270. Whereas the Class Complaint alleges sufficient facts to support a finding of negligence, and perhaps even of gross negligence, it fails to allege enough to support a finding of conscious recklessness.

■ With respect to defendant Robbins, plaintiffs have come closer to meeting their burden of pleading fraud with particularity, but have still not come close enough. Whereas Griffin is alleged to have been the "Director of Financial Reporting," Complaint at ¶ 21, Robbins is alleged to have been "Vice President and Controller" of the company. The Complaint alleges that she "was aware that Fine Host improperly capitalized corporate overhead," that she "asked [Barber] for back-up [to support an increase in the amount of corporate capitalization by over $14 million] and never received any," and that she "nevertheless ... permitted fraudulent financial statements to be disseminated to the investing public." Complaint at ¶ 155d. Although the allegations against Robbins are stronger than those against Griffin, they are still insufficient. The mere fact that Robbins did not alter the financial statements when she did not receive any back-up for the change in corporate capitalization is not enough to support a finding that she had fraudulent intent. Nowhere does the Complaint allege that she knew, or even that she suspected, that the numbers were false. In the language of the Complaint itself, all she did was "permit fraudulent financial statements to be disseminated." The Complaint does not allege that she knew or even ought to have known that the statements were fraudulent. To the extent that the Complaint attempts to use blanket language at the beginning of ¶ 155 ("Each of the individual Defendants knew and/or recklessly disregarded the false and misleading nature of the information"), it fails to allege with particularity what defendant Robbins knew. *See Brinker Capital Holdings, Inc. v. Imagex Servs., Inc.,* 178 F.R.D. 380, 384 (N.D.N.Y.1998). As such it is insufficient under Rules 12(b)(6) and 9(b).

■ Second, even if pleading "motive and opportunity" remains sufficient to allege scienter under the PSLRA, plaintiffs have not pleaded specific facts sufficient to support a finding of it here. Plaintiffs contend that their allegations that Griffin's and Robbin's incentive compensation was based, in part, on the strength of Fine Host's financial results, *see* Class Complaint at ¶ 152, are sufficient to support a finding that Griffith

and Robbins had a motive to commit fraud. However, the Second Circuit has held directly to the contrary. *See Acito,* 47 F.3d at 54 (holding bare allegation that defendants were motivated to defraud public because an inflated stock price would increase their compensation insufficient to plead scienter).

Plaintiffs have therefore failed to allege specific facts upon which a reasonable jury could find that either Griffin or Robbins had motive to commit fraud. Accordingly, Griffin's and Robbins' motions to dismiss are granted.

### C. Motions by defendants Kerley, Barber, and Fine Host to dismiss various counts of the MainStay Complaint

#### 1. Scienter

Each of the three defendants argues that the MainStay plaintiff's section 10(b) and common-law fraud claims be dismissed for failure to plead scienter adequately. [Dkt.# s 22, 24, 26]. Barber and Kerley present identical arguments in support of their position. They argue first that plaintiffs' factual allegations are conclusory and fail to raise a strong inference of fraudulent intent. Second, they contend that the PSLRA require plaintiffs who plead on "information and belief" to indicate the source of all information upon which their complaint is based. In addition, Fine Host argues that because scienter has not been adequately pled as to either Barber or Kerley, it has also not been pled adequately as to Fine Host.

#### a. Defendant Barber

■■■ Barber's argument are unavailing. Under Second Circuit law, an allegation of specific facts indicating that a defendant consciously falsified financial statements is sufficient to meet the pleading standard for scienter. *SEC v. U.S. Envt'l, Inc.,* 155 F.3d 107, No. 97–6195, 155 F.3d 107, 1998 WL 559027, at *4 (2d Cir. Aug.25, 1998). In the Class Complaint, plaintiffs have met this burden with respect to defendant Barber. In their complaint, plaintiffs allege that in a conversation with Catherine James on December 8, 1997, Barber "admitted that he knowingly capitalized current expenses in order to increase Fine Host's reported earnings, and

further admitted that he knowingly marked-up the amounts of expenses before capitalizing them, a practice he knew violated [GAAP] and would create a materially false and misleading picture of the financial condition of Fine Host." MainStay Complaint at ¶¶ 46, 66. This allegation is plainly sufficient.

■■■ Barber's argument that plaintiffs have failed to plead fraud with particularity because they have failed to attribute the source of the information upon which the allegations are based is also without merit. The language in the PSLRA on which Barber bases his argument is inapplicable to the allegations in this case. The provision at issue states that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Here, Barber does not dispute that plaintiffs have met their pleading burden with regard to establishing that misleading statements were made. Instead, he argues that the quoted statutory language applies not only to allegations about the statements were made. Instead, he argues that the quoted statutory language applies not only to allegations about the statements themselves, but also to allegations about defendants' state of mind.

This interpretation is flatly contradicted by the structure of the statute. The language quoted is contained only in subsection 78u–4(b)(1), which is entitled "Misleading statements and omissions ." The following subsection, entitled "Required state of mind," is devoid of any such language. Therefore, it would be incorrect to construe the PSLRA as having imposed on plaintiffs the burden to plead scienter by stating with particularity all facts on which allegations of scienter made on information and belief were formed. Rather, as explicitly stated in the statute, in order to plead scienter adequately, a plaintiff need only "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."

15 U.S.C. § 78u–4(b)(2). As has been discussed, plaintiffs have met this burden.

### b. Defendant Kerley

██ The complaint also sufficiently alleges scienter as to Kerley. As was noted above, it is well established that scienter can be pled by allegations that give rise to a strong inference of either knowledge or conscious recklessness.[3] *Chill v. General Electric Company,* 101 F.3d 263, 269 (2d Cir. 1996).

Plaintiffs have sufficiently alleged scienter by Kerley as to the falsity of the financial statements. The allegation that Fine Host told analysts that their reports contained unrealistic projections one day after the sale of the Notes, Complaint at ¶¶ 28–32, is sufficient to raise a strong inference that Kerley must have been aware that the projections were unrealistic at the time he made representations to plaintiffs, not more than five days before the sale. *See Chill,* 101 F.3d at 269. Although plaintiffs have not alleged that Kerley personally informed the analysts that their projections were unrealistic, it is reasonable to infer that, as CEO, he knew, or was consciously reckless in not knowing, of the information at the time he made representations to plaintiffs, just six days before it was disseminated publicly. *Id.*

Kerley's argument that plaintiffs have failed to attribute the source of the information upon which their allegations are based is rejected for the same reasons as defendant Barber's identical argument was rejected.

### c. Defendant Fine Host

Because scienter has been adequately pled as to Fine Host's agent Barber and Kerley, it has also been adequately pled as to Fine Host. *See Reinfeld v. Riklis,* 722 F.Supp. 1077, 1085 (S.D.N.Y.1989) (scienter of agent is imputed to principal); *Connors v. Lexington Ins. Co.,* 666 F.Supp. 434, (E.D.N.Y.1987) (same).

### 2. Transaction causation

██ Kerley and Barber argue further that Counts I and IV should be dismissed for failure to adequately plead that plaintiffs relied on the alleged misrepresentations. Defendants state that, according to plaintiffs' complaint, the representations upon which plaintiffs base their fraud allegations were made to plaintiffs' investment advisor, Mac-Kay–Shields Financial Corporation ("Mac-Kay"), rather than to plaintiffs themselves. Kerley Memorandum of Law [Dkt.# 26] at 18. Defendants contend that an alleged misrepresentation made to a third party may be sufficient to establish transaction causation, but does not relieve a plaintiff of its burden to plead that it relied on that alleged misrepresentation. *Id.* Defendants claim that the complaint therefore does not contain the necessary allegations that plaintiffs relied on the alleged misrepresentations made to MacKay. *Id.* at 19.

██ Defendants' argument fails. This case is different from those cited by defendants that involve the concept of "derivative reliance." Under that doctrine, "a misrepresentation communicated to one person can support a claim for fraud by another person if the maker of the misrepresentation intends or has reason to expect that the statement will be repeated to the other person." *Chase Manhattan Bank, N.A. v. Fidata Corp.,* 700 F.Supp. 1252, 1261 (S.D.N.Y.1988) (citing *Ostano Commerzanstalt v. Telewide Systems, Inc.,* 794 F.2d 763, 765–66 (2d Cir.1986)). It appears to be an open question whether reliance by the third party on the misrepresentation is sufficient to state a claim under section 10(b) and Rule 10b–5, or whether, as contended by defendants, reliance by the plaintiff itself must be alleged.

This court need not decide that question, however, because in this case, it is alleged that the third party was plaintiffs' agent. MainStay Complaint at ¶¶ 13, 23, 82, 93, 97. Under well-settled principles of agency law, one who defrauds an agent is liable to the principal. Restatement (Second) of Agency § 315. In other words, a principal may sue when it is his agent who has been defrauded. Applying that general principle of agency law to this action, plaintiffs need only allege that

---

**3.** Because this court finds the allegations to be sufficient to allege knowledge or conscious recklessness by Kerley, it need not address Kerley's argument that a showing of "motive and opportunity" is not sufficient to establish scienter under the PSLRA.

an agent acting on their behalf reasonably relied on the alleged misrepresentations of the defendants. Plaintiffs have met that pleading requirement. *See* MainStay Complaint at ¶¶ 23, 82, 93.

### 3. Special relationship

■ Fine Host and Kerley argue that plaintiffs' cause of action based on negligent misrepresentation must be dismissed because plaintiffs have failed to allege the existence of any "special relationship" between defendants and themselves

■ The portions of defendants' motions that seek to dismiss plaintiffs' negligent misrepresentation claim are granted. Under New York law, which plaintiff assumes governs, "liability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263, 652 N.Y.S.2d 715, 675 N.E.2d 450 (1996). "Something more than the trust and reliance between an ordinary buyer and seller must be established. An arm's length business transaction is insufficient." *Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*, No. 96 Civ. 3231, 1998 WL 167330 (S.D.N.Y. Apr.8, 1998), at *11.

In this case, plaintiffs have failed to allege specific facts that would give rise to an inference of a special relationship between defendants and themselves. Nowhere do plaintiffs allege that they had any relationship with defendants prior to the one that formed with regard to their purchase of the Notes. Plaintiffs argue that their complaint is sufficient because it contains allegations that Fine Host and Kerley personally solicited them, through their agent MacKay, and provided them with information for the express purpose of inducing them to purchase the Notes. Complaint at ¶¶ 97–98. However, under plaintiffs' broad construction of the term "special relationship," virtually every issuer in a private placement, or even every person who solicits another to enter into a contract, would be deemed to have such a relationship with the purchaser. Such a construction would eviscerate the meaning of the word "special." This complaint alleges nothing more than an ordinary private placement, with an ordinary buyer-seller relationship. Therefore, defendants' motions are granted insofar as they seek to dismiss Count V.

### 4. Control person liability under section 20(a)

■ Kerley and Barber move to dismiss plaintiffs' section 20(a) claim for failure to plead specific facts that could support a finding that they possessed "control" over a primary violator of the securities laws and were in some meaningful sense culpable participants in any wrongdoing.

Section 20(a) provides that "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person, unless the controlling person acted in good faith and did not directly or indirectly induce the acts or acts constituting the violation of cause of action," 15 U.S.C. § 78t(a). It is well established that in order to survive a motion to dismiss, a plaintiff must allege that a defendant was a "control person" under section 20(a). District courts within the Second Circuit have consistently ruled that an allegation of "control by status" as an officer, director, or shareholder, without more, is not enough to satisfy this burden. *See Cohen v. Citibank, N.A.*, 954 F.Supp. 621, 629 (S.D.N.Y.1996) ("[A] bare allegation that a person is a corporate officer, director, or shareholder is insufficient to allege 'control' ".); *Food & Allied Serv. Trades v. Millfeld Trading*, 841 F.Supp. 1386, 1390 (S.D.N.Y.1994) ("[C]ourts in this circuit ... have agreed that a bare allegation of director status, without more, is insufficient."). The courts have disagreed, however, as to whether, in addition to alleging that defendant was a control person, a plaintiff must allege that the defendant engaged in culpable conduct or acted with scienter. Compare *Food & Allied Serv. Trades*, 841 F.Supp. at 1390 (holding that culpable conduct need not be alleged) and *In re Bausch & Lomb, Inc. Securities Litig.*, 941 F.Supp. 1352 (W.D.N.Y.1996)

(same) with *Morse v. Weingarten,* 777 F.Supp. 312, 318 (S.D.N.Y.1991) (requiring plaintiff to plead defendant's knowledge of primary violation) and *In re Par Pharmaceutical, Inc. Securities Litig.,* 733 F.Supp. 668, 679 (S.D.N.Y.1990) (plaintiffs must allege that defendants were "in some meaningful sense culpable participants in the fraud perpetrated by controlled persons").

Defendants' argument that plaintiffs have failed to adequately allege that defendants qualify as "control persons" is without merit. Plaintiffs have alleged more than mere status in their complaint. In Paragraphs 87–88, for example, plaintiffs allege that "b[y] virtue of their high level positions, their responsibility for financial reporting and their intimate knowledge of the Company's financial condition and business practices, [Kerley and Barber] had the power to, and did, directly influence and control the decision-making and financial reporting of Fine Host." Complaint at ¶ 87. Such an allegation goes beyond mere status and is plainly sufficient to defeat a motion to dismiss on that ground. *See Food & Allied Serv. Trades,* 841 F.Supp. at 1391; *Bausch & Lomb,* 941 F.Supp. at 1368. In addition, this court need not resolve the question of whether culpable conduct must be alleged. As was previously discussed, the MainStay Complaint has adequately alleged scienter as to both Kerley and Barber. Therefore, even if culpable conduct is required, it has been sufficiently alleged in this case.

### 5. Punitive damages

Defendant Fine Host moves to dismiss plaintiffs' claim for punitive damages of "$500,000 against all defendants jointly and severally." It argues that because plaintiffs have not adequately alleged that any of the defendants acted with evil or reprehensible motives, punitive damages are unavailable.

At this motion-to-dismiss stage, Fine Host's argument is without merit. It is not disputed that punitive damages are unavailable for alleged violations of the federal securities laws. *Manufacturers Hanover Trust Co. v. Drysdale Secs. Corp.,* 801 F.2d 13, 29 (2d Cir .1986). However, plaintiffs' pendent claim of common law fraud is governed by New York law, under which punitive damages may be recovered if "the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives." *Walker v. Sheldon,* 10 N.Y.2d 401, 404, 223 N.Y.S.2d 488, 179 N.E.2d 497 (1961).

Plaintiffs have alleged that the fraudulent conduct of Fine Host, Kerley, and Barber "was gross, wanton and demonstrates a high degree of moral culpability." MainStay Complaint at ¶ 95. This allegation is plainly sufficient under Fed.R.Civ.P. 9(b), which states that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." As Wright and Miller have noted in construing Rule 9(b), "[w]hen the malice of a person is in issue, a general averment will suffice, even when it is an element ... of his claim for punitive damages." Wright & Miller, 5 *Federal Practice and Procedure,* § 1301, at 676. This court is therefore of the view that "[w]hether [plaintiffs] can prove that the defendants engaged in the sort of morally culpable conduct that would warrant an award of punitive damages of course remains to be seen, but [they] are entitled to present [their] proof on the issue." *Banco Nacional v. Bremar Holdings Corp.,* 492 F.Supp. 364, 374 (S.D.N.Y.1980). Defendant Fine Host's motion to dismiss plaintiffs' claim for punitive damages is therefore denied.

### III. CONCLUSION

For the foregoing reasons, the motions of Kerley, Barber, and Fine Host to dismiss Count I of the Class Complaint [Dkt.# s 41, 43, 47] are hereby DENIED; the motions of Griffin and Robbins to dismiss the entire Class Complaint as to them [Dkt.# s 45, 59] are hereby GRANTED; and the motions by Kerley, Barber, and Fine Host to dismiss various portions of the MainStay Complaint [Dkt.# s 81, 82, 83] are hereby GRANTED insofar as they seek to dismiss Count V, and are hereby DENIED in all other respects.

Plaintiffs may replead as to any of the dismissals if done within 30 days and there is a basis for so doing.

**SO ORDERED.**