**Mark A FEINER, M.D.
et al., Plaintiffs,**

v.

**SS&C TECHNOLOGIES, INC.,
et al., Defendants.**

**No. Civ.A.3:97–CV656JCH.**

United States District Court,
D. Connecticut.

March 23, 1999.

Andrew M. Schatz, Schatz & Nobel, Hartford, CT, I. Stephen Rabin, Rabin & Peckel, New York City, for plaintiffs.

William H. Prout, Jr., Wiggin & Dana, New Haven, CT, John F. Batter, Hale & Dorr, Boston, MA, for SS&C Tech, Inc., John S. Wieczorek, Shane A. Chalke, John Clinton, William Ford, William C. Stone, Peter L. Bloom, David Clark, Joseph Fisher, William Wyman, defendants.

1. For greater factual detail, see the courts' ruling on Defendants' Motion to Dismiss,

Jack Auspitz, Morrison & Foerster, New York City, Steven D. Ecker, Cowdery & Ecker, Hartford, CT, for Alex. Brown & Sons, Hambrecht & Quist, defendants.

## RULING ON LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [DKT. # 57]

HALL, District Judge.

This securities action arises out of an initial public offering ("IPO") of shares in SS & C Technologies, Inc. ("SS & C") that was underwritten by Alex. Brown & Sons Incorporated ("Alex.Brown") and Hambrecht & Quist LLC ("Hambrecht & Quist").[1] The lead plaintiffs, all of whom purchased shares of SS & C during the period from May 31, 1996 through August 1, 1996, have moved this court pursuant to Fed.R.Civ.P. 23(c)(1) for an order certifying this suit as a class action. Defendants oppose the motion on a number of grounds. They argue first that plaintiffs' proposed class is impermissibly broad because it includes people who, having purchased shares in the aftermarket rather than in the IPO, lack standing to sue under Sections 11 and 12(2) of the Securities Act of 1933. Second, defendants contend that plaintiffs are not proper class representatives because they fail to satisfy the "typicality" and "adequacy" requirements of Fed.R.Civ.P. 23(a). For the following reasons, the lead plaintiffs' motion to certify a class is GRANTED.

## I. DISCUSSION

■ Defendants' contention that the class should be limited to people who purchased shares during their initial distribution is without merit. As this court recently held, shareholders need not have purchased their securities directly from an issuer or statutory seller to assert a cause of action under § 11. *See In re Fine Host Corp. Sec. Litig.,* 25 F.Supp.2d 61, 67 (D.Conn.1998). Instead, "any purchas-

*Feiner v. SS&C Techs., Inc.,* 11 F.Supp.2d 204 (D.Conn.1998).

er has standing to sue under section 11 so long as the securities purchased can be traced back to the offering containing the allegedly defective registration statement." *Id.* Defendants' argument that the reasoning of *Fine Host* is inapposite to this motion is without merit. While it is true that *Fine Host* concerned a motion to dismiss whereas the instant motion is one for class certification, this difference is not one of consequence. In *Fine Host,* this court addressed a question of law, namely whether a plaintiff who can trace his share purchase to a registered offering has standing to sue under § 11 for a defect in the registration. That same question of law is presented here and the court answers it the same way: such a plaintiff does have standing.[2] Therefore, the fact that the proposed class in this case contains people who made aftermarket purchases of shares traceable to the registration statement,[3] as well as those who acquired their shares during the initial distribution, does not make the class overly broad. Nor does named plaintiff Theodore Davis's statement that he did not purchase shares in the IPO make his claims "atypical."[4]

Defendants' "initial distribution" argument fails with regard to plaintiffs' § 12(a)(2) claim as well. Section 12(a)(2) does not require that shareholders purchase their securities during the initial distribution of shares, but only that plaintiffs "purchase their shares directly from a seller who makes use of a false or misleading prospectus." *Fine Host,* 25 F.Supp.2d at 67. The statute draws no express distinction between shares purchased in the initial distribution and shares purchased in the aftermarket.[5] Instead, the statute requires only that a plaintiff have purchased a security, from a seller, pursuant to a misleading prospectus. *See* 15 U.S.C. § 77l.

The Supreme Court's statement in *Gustafson v. Alloyd* that " § 12(a)(2) liability [is] limited to public offerings" is not to the contrary. 513 U.S. 561, 578, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995). In *Gustafson,* the Court was drawing a distinction between public offerings and private ones, not between public offerings and aftermarket purchases. The central question in *Gustafson* was whether a purchase agreement used in connection with a private placement of securities could be considered a "prospectus" within the meaning of § 12(a)(2). *See id.* at 568, 115 S.Ct. 1061 ("The determinative question, then, is whether the contract between Alloyd and Gustafson is a 'prospectus' as the term is used in the 1933 Act."). The Court answered that question in the negative, holding that the term "prospectus" is "confined to documents related to public offerings by an issuer or its controlling

---

**2.** Defendants' argument in the alternative that § 11 standing extends to only those plaintiffs who purchased their shares within 25 days of the IPO is similarly unavailing. Under the plain meaning of § 11 and the Second Circuit's interpretation of that provision in *Barnes v. Osofsky,* 373 F.2d 269 (2d Cir.1967), any plaintiff who can trace his or her purchase to an allegedly defective registration statement has standing to sue under § 11. Whether or not the purchase occurred within 25 days of the IPO is irrelevant.

**3.** Because this case involves an IPO, all shares purchased in the class period are traceable to the registration statement. Therefore, the tracing requirement is necessarily satisfied for all proposed class members who made aftermarket purchases.

**4.** Because plaintiffs' counsel has agreed to withdraw Brian Kreidler as a named representative for the class, the court need not address the question of whether his § 11 claim is atypical.

**5.** The court realizes that some of its statements in *Fine Host* could be interpreted to endorse the notion that § 12(a)(2) does not extend to aftermarket trading. *See Fine Host,* 25 F.Supp.2d at 67. The holding in *Fine Host* concerned the scope of liability under § 11, not under § 12(a)(2). To the extent that the opinion included dicta suggesting that aftermarket trading cannot give rise to § 12(a)(2) liability, the court disavows that dicta in favor of the more thorough analysis on the issue expressed in today's ruling.

shareholders." *Id.* at 569, 115 S.Ct. 1061. Therefore, the Court's statement that " § 12(a)(2) liability [is] limited to public offerings" cannot be read to exclude aftermarket trading. By using the term "public offerings," the Court was simply distinguishing offerings in which the filing of a prospectus is required under the securities laws, i.e., public offerings, from those in which no prospectus need be filed, i.e., private placements. *See id.* ("By and large, only public offerings ... require the preparation and filing of registration statements. *See* 15 U.S.C. §§ 77d, 77e, 77b(11). It follows, we conclude, that a prospectus ... is confined to documents *related* to public offerings by an issuer or its controlling shareholders.") (emphasis added). The Court did not go further and address the question presented here, namely' whether, within the context of a public offering, § 12(a)(2) liability attaches to only the initial distribution of securities or to certain aftermarket trading as well.

■ This court now holds that § 12(a)(2) extends to aftermarket trading of a publicly offered security, so long as that aftermarket trading occurs "by means of a prospectus or oral communication." 15 U.S.C. § 77l. This is not to say that a prospectus need in fact have been delivered for a purchaser to have a § 12(a)(2) claim. *See Demarco v. Edens,* 390 F.2d 836, 841 (2d Cir.1968). Rather, all that is necessary is that delivery of a prospectus have been required under the statutory and regulatory framework. *See Gustafson,* 513 U.S. at 570, 115 S.Ct. 1061 ("[T]he liability imposed by § 12(a)(2)[ ] cannot attach unless there is an obligation to distribute the prospectus in the first place...."). Under this framework, delivery of a prospectus is required for a fixed number of days after the registration statement becomes effective, even if the initial distribution of shares has already been completed. *See* 15 U.S.C. §§ 77d, 77e; 17 C.F.R. § 230.174(d). To limit § 12(a)(2) liability to the initial distribution would eviscerate this requirement. Under

such a reading of § 12(a)(2), the statutory and regulatory framework would require that a prospectus be delivered for a certain number of days after the beginning of an offering, but' would not require that the statements in that prospectus be truthful and non-deceptive. Moreover, the express language of § 12(a)(2) limits misrepresentations in connection with the sale of a security "by means of a prospectus," not "in a public offering." The court therefore rejects defendants' argument that § 12(a)(2) liability is limited to shares purchased in an initial distribution. Instead, the court holds that § 12(a)(2) liability is coextensive with the statutory and regulatory prospectus-delivery requirements.

In this case, the statutory and regulatory framework required that a prospectus be delivered for all transactions in SS & C common stock by Hambrecht & Quist or Alex. Brown within 25 days of the offering date. Any sale by an underwriter requires the delivery of a prospectus until such time as the initial distribution of shares is complete. *See* 15 U.S.C. §§ 77d, 77e. In this case, it is undisputed that the initial distribution was complete on May 31, 1996, the first day of the IPO. Therefore, to the extent that Hambrecht & Quist or Alex. Brown made sales after this date, they did so not in their capacity as underwriters, but in their capacity as ordinary "dealers." *See* 15 U.S.C. § 77d(3) (defining "dealer" to include "an underwriter no longer acting as an underwriter in respect of the security involved in such transaction."). A sale by a dealer requires the delivery of a prospectus if the sale takes place within 90 days of the effective date of the registration statement for initial offerings, or within 40 days for secondary offerings, or within a shorter period set by the Securities and Exchange Commission (the "SEC"). 15 U.S.C. §§ 77d, 77e. Regulations adopted by the SEC have reduced the time period to 25 days after the offering date, provided that: (1) the security was not subject to § 13 or § 15(d) of the 1934 Act; and (2) as of the offering date, the security was listed on a registered national securi-

ties exchange or authorized for inclusion in a qualified electronic inter-dealer quotation system. 17 C.F.R. § 230.174(d). Here, SS & C stock was not subject to § 13 or § 15(d), and was sold on a national securities exchange. Therefore, the reduced, 25–day period applies. Because the security's registration statement became effective on May 31, 1996, Hambrecht & Quist and Alex. Brown were required to deliver the prospectus any time that they sold the security up until the end of the day on June 25, 1996.

■ Not all members of the proposed class who purchased SS & C stock within the 25–day period have standing to bring a claim against Hambrecht & Quist or Alex. Brown under § 12(a)(2), however. Section 12(a)(2) further requires that plaintiffs "purchase their shares directly from a seller who makes use of a false or misleading prospectus." *Id.* at 67. The term "seller" encompasses not only anyone who stands in privity with a purchaser, but also anyone "who successfully solicits the purchase [of a security], motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Pinter v. Dahl,* 486 U.S. 622, 646, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988); *see Wilson v. Saintine Exploration & Drilling Corp.,* 872 F.2d 1124, 1126 (2d Cir.1989) (holding *Pinter* analysis to apply to claims arising under § 12(a)(2)). In order to fall within this second category of seller, a defendant must have "actually solicited" the purchase by the plaintiffs. *Capri v. Murphy,* 856 F.2d 473, 479 (2d Cir.1988). Therefore, a defendant's mere status as an underwriter is not sufficient to make it a seller to all purchasers for purposes of § 12(a)(2).

■ In this case, only certain members of the proposed class have standing to bring a § 12(a)(2) claim against Hambrecht & Quist or Alex. Brown. Plaintiffs concede that this was a "firm commitment" underwriting, i.e., one in which SS & C sold all of the shares that were issued in the IPO to the underwriters, who, in turn, sold all of the shares directly to the invest-

ing public. *See* Plaintiffs' Reply Mem. at 14 n. 11. Because Hambrecht & Quist and Alex. Brown owned all of the shares, any sale made by either of them in the initial distribution would pass title directly to the purchaser. Therefore, any purchaser in the initial distribution stands in privity with either Hambrecht & Quist or Alex. Brown and has a § 12(a)(2) claim against them on that basis. Similarly, if either Hambrecht & Quist or Alex. Brown reacquired shares in aftermarket trading and then resold them on the aftermarket within the 25–day period, any purchaser of the resold shares would also have standing to bring a 12(a)(2) claim. In addition, to the extent that Hambrecht & Quist and Alex. Brown acted as dealers for third parties in aftermarket trading, plaintiffs who purchased from them in that capacity on or before June 25, 1996 have § 12(a)(2) standing. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 50 (2d Cir.1991) ("Section 12 liability has since the enactment of the Securities Act been applied to brokers and others who solicit securities purchases on a regular basis.").

Purchasers who did not acquire their shares directly from either Hambrecht & Quist or Alex. Brown, however, lack § 12(a)(2) standing. Such purchasers did not acquire their shares "directly from a seller who makes use of a false or misleading prospectus." *Fine Host,* 25 F.Supp.2d at 67. Any argument by plaintiffs that standing to sue belongs to everyone who purchased SS & C shares within the class period is thus without merit. Under § 12(a)(2), "only a defendant from whom the plaintiff purchased securities may be liable." *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 49 (2d Cir.1991). Therefore, proposed class members who purchased shares of SS & C from someone other than Hambrecht & Quist or Alex. Brown have no standing to sue either of them under § 12(a)(2).

■ That said, plaintiffs have not demonstrated that all class members have

standing to bring both a § 11 and § 12(a)(2) claim. For example, someone who purchased shares during the 25–day period, but did not purchase those shares from Hambrecht & Quist or Alex. Brown, would not have standing to sue either of those defendants under § 12(a)(2). Nevertheless, he would have standing to sue under § 11. The same holds true for someone who purchased shares during the class period, but outside of the 25–day period required for a § 12(a)(2) claim. Therefore, within the larger class of plaintiffs who have standing to assert a § 11 claim, the court will certify a subclass, consisting of those plaintiffs who also have standing to sue under § 12(a)(2).[6] For the reasons discussed above, the subclass shall consist of everyone who purchased SS & C common stock from Hambrecht & Quist or Alex. Brown from May 31, 1996 through and including June 25, 1996. Joseph Algiere, Robert Miller, Brian Kreidler, and Daniel Kreidler, each of whom purchased SS & C stock directly from Alex. Brown or Hambrecht & Quist during the initial distribution, shall serve as named representatives of the subclass.

As the lead plaintiffs have demonstrated in their brief, they have fulfilled the remaining requirements for certification under Fed.R.Civ.P. 23(a) and 23(b)(3). Although defendants are correct that a plaintiff who is unfamiliar with the basis for the lawsuit is not an adequate class representative, *see Larson v. Dumke*, 900 F.2d 1363, 1367 (9th Cir.1990); *Epifano v. Boardroom Bus. Prods., Inc.*, 130 F.R.D. 295, 302 (S.D.N.Y.1990); *Kamerman v. Steinberg*, 113 F.R.D. 511, 517 (S.D.N.Y. 1986), the deposition testimony of the various lead plaintiffs reveals that they are sufficiently familiar with the nature of the suit to represent the interests of their fellow class members adequately. In addition, Brian Kreidler's § 12(a)(2) claim is not atypical and he therefore remains a satisfactory representative of the subclass, even though plaintiffs' counsel have voluntarily withdrawn him as a named representative for the class as a whole.

## II. CONCLUSION

The lead plaintiffs' motion for class certification is therefore GRANTED. The class shall consist of all purchasers of the common stock of SS & C Technologies, Inc. from May 31, 1996, through and including August 1, 1996, and shall include a subclass consisting of everyone who purchased common stock of SS & C Technologies, Inc. from Hambrecht & Quist or Alex. Brown from May 31, 1996 through and including June 25, 1996. Excluded from the class are the defendants, all officers and directors of any of the defendants or their subsidiaries, members of defendants' immediate families, any entity in which any defendant has a controlling interest, and the legal representatives, heirs, successors, and assigns of any such excluded person. With the exception of Brian Kreidler, all of the lead plaintiffs are hereby CERTIFIED as representatives of the class. Joseph Algiere, Robert Miller, Brian Kreidler, and Daniel Kreidler, are hereby CERTIFIED as representatives of the subclass. Schatz & Nobel, P.C. and Rabin & Peckel LLP are hereby CERTIFIED as counsel for both the class and the subclass. **SO ORDERED.**

---

**6.** Defendants argue that, if the court deems certification proper, it ought to certify two separate classes rather than a class and a subclass. The court declines to do so. It is true that certain plaintiffs who have both a § 11 and § 12(a)(2) claim may not be able to prove that they suffered damages under § 11. For example, someone who purchased from Hambrecht & Quist or Alex. Brown within the 25–day period, but subsequently sold the stock at a profit, did not suffer cognizable damages under § 11. Nevertheless, the court need not place plaintiffs who have § 12(a)(2) claims in a separate class. "Differences in the damages sustained by individual class members does not preclude a showing of typicality, nor defeat class certification." *In re Playmobil Antitrust Litig.*, 35 F.Supp.2d 231, 242–43 (E.D.N.Y.1998).